1838.

Ward
v.
Sea Insurance
Company.

---

### WARD and others *vs.* THE SEA INSURANCE COMPANY.

Where a company which had been incorporated for the purpose of making marine insurances, and of lending money upon bottomry and respondentia securities, suspended the business for which it had been incorporated, for more than a year, under a formal resolution to that effect by the board of directors; *Held*, that the corporation had forfeited its charter, and was liable to be dissolved under the provisions of the revised statutes; although the company in the mean time had attended to the adjustment of losses upon risks previously assumed, and to the business of collecting in and securing the corporate funds.

The directors of a corporation, even with the consent of the stockholders, are not authorized to discontinue the corporate business and to distribute the capital stock among the stockholders, unless they are specially authorized to do so by a legislative act, or by a decree of the court of chancery dissolving the corporation in the manner prescribed by the revised statutes.

Where the directors of a corporation do any act which works a forfeiture of the charter of the company, it is such a violation of the law incorporating the company as to authorize a creditor, or a stockholder of the corporation to institute proceedings against it, for the purpose of having a receiver appointed to close up the concerns of the company, under the provisions of the revised statutes relative to proceedings against corporations in equity.

An intentional neglect on the part of the officers of a corporation to notify and hold the annual election for directors, as required by the act of incorporation, is such a violation of the provisions of the charter of the company as will authorize the court of chancery to appoint a receiver, and to decree a dissolution of the corporation.

December 4.     THIS was a petition of some of the stockholders of the Sea Insurance Company for the appointment of a receiver of the property and effects of the company, with the usual powers of a receiver to close up the affairs of the company, in conformity to the provisions of the article of the revised statutes relative to proceedings against corporations in equity; and for an injunction to restrain the officers and directors of the company from collecting, receiving, disposing of, or in any way interfering with the property or effects of such

company. The petition stated, among other things, that the company was incorporated in May, 1834, with a capital of $250,000, with the power to make marine insurance upon vessels, goods or merchandize, freight, bottomry interests, and all marine risks, and upon inland navigation and transportation, and to lend money upon bottomry and respondentia. And the petitioners complained, among other things, that the company, in January, 1837, resolved to suspend the business of the company, and had since that time committed the care and management of the estate and effects of the company to the president and secretary, aided by three of the directors; that the directors had neglected to make a statement of the property and affairs of the company, for the inspection of the stockholders, previous to the time appointed for the last annual election of directors, as required by the act of incorporation; that the petitioners had also been refused an inspection of the books of the company for the purpose of ascertaining the situation of its affairs; that the business of the company had been suspended for more than a year; and that no election for directors had been held at the time appointed by law for the last annual election. Various acts of fraud on the part of the commissioners and others, in obtaining subscriptions of stock in the company, were alleged in the petition, but denied by the affidavits in opposition thereto; which allegations were considered by the chancellor as irrelevant to the subject of the petition. An order for the directors and officers of the company to show cause why the prayer of the petitioners should not be granted having been made, and notice thereof having been served on the president and secretary of the company and upon the attorney general, the directors and officers of the company put in affidavits in opposition to the application. In those affidavits all the material allegations in the petition were denied, except the allegations that the company neglected to hold the annual election in January, 1838, for the election of directors, and that the company had not taken any new risks since the passage of a resolution of the board of directors, in January, 1837, by which it was determined or agreed to suspend making any further insurances, and to

close up the affairs of the company as soon as it could be done.

*J. Blunt & D. Lord, jun.* for the petitioners.

*W. C. Noyes,* for the directors and officers of the company.

THE CHANCELLOR. The resolution of January, 1837, followed as it has been by a general suspension of the business of insurance, and of loaning money upon the marine risks of bottomry and respondentia, for more than a year previous to the presenting of the present petition, was a suspension of the ordinary business of the corporation within the meaning of the 38th section of the article of the revised statutes relative to proceedings against corporations in equity. (2 *R. S.* 463.) The ordinary and lawful business of the corporation, as contemplated by the revisers who framed and the legislature that adopted that statutory provision, was not the mere adjustment of losses upon risks previously assumed by the company, nor the collecting in of its corporate funds with a view to the final closing up of its concerns. But the business referred to in that section, as applicable to this corporation, was the business for which the company was incorporated; as specified in the fifth section of the act incorporating the company. (*Laws of* 1834, *p.* 524.) The safe investment of the surplus capital and other funds of the company which were not wanted to pay losses or to loan upon marine securities, the settlement and adjustment of losses, the collection or payment of debts due to or by the company, and the conversion of the corporate property, securities and effects into money, when necessary for the corporate purposes, were powers merely incidental to the ordinary business of the company for the transaction of which it was incorporated. The exercise of some of those incidental powers, by the officers of the corporation, within the year and during the time when the ordinary business for which the corporation was created remained suspended, will not prevent a dissolution of the corporation upon a proper application for that purpose. Neither were

the directors of the corporation, even with the assent of the stockholders, authorized to discontinue their corporate business and wind up the affairs of the corporation, or to distribute the capital among the stockholders; unless by the authority of a special act of the legislature, or under a decree of this court dissolving such corporation, in the manner prescribed by law. Every corporation is, or at least in legal contemplation is supposed to be, created on account of the benefit which the public at large, or some particular section or class of the community, will derive from the exercise of its corporate powers; as well as for the individual benefit of the stockholders of the company. And although this principle is too often overlooked by legislators, so that corporations are sometimes created to the real injury of the public, instead of the benefit of any one except the corporators themselves, the principle itself must not be lost sight of in giving a proper construction to the provisions of the article of the revised statutes relative to proceedings against corporations in equity. The 38th section of this article, which contains the provision relative to the suspension of the ordinary business of the corporation, and is applicable to proceedings against corporations generally, does not appear to be directly connected with the four succeeding sections; which latter sections are confined to monied corporations as defined in a previous part of the revised statutes. It is therefore insisted on the part of the directors and officers of the company, in the present case, that although this is a monied corporation within the legislative definition thereof, the case made by the petition is not one which can authorize the attorney general, or a creditor or stockholder of the corporation, to apply for an injunction, and for the appointment of a receiver of the property and effects of the corporation, for the purpose of closing up its concerns. I am of the opinion, however, that it was the intention of the legislature, that when a monied corporation should have conducted itself in such a manner as to have forfeited its corporate franchises and privileges, so as in law to be deemed to have surrendered them, this should be considered such a violation of the provisions of its act of incorporation as to authorize this

proceeding, on the part of any of the stockholders of the company, under the 39th and 40th sections of the same article. Indeed, I can see no reason why the 38th section was introduced into this article of the revised statutes relative to proceedings against corporations in equity, unless it was intended to give this court jurisdiction to declare the corporation dissolved for any of the causes specified in that section; and also to enable this court, in such a case, to appoint a receiver to close up the affairs of the company and to distribute its surplus funds, if any, among its stockholders.

But if there is any doubt as to the power of the petitioners to proceed in this manner on account of the suspension of the business of this company, the intentional neglect of the directors to hold the annual election, on the first Tuesday of January last, was a violation of one of the positive provisions of the act of incorporation; and that, by the express terms of the 39th section, above referred to, (2 *R. S.* 464,) authorizes this court to grant an injunction and to appoint a receiver upon the petition of a stockholder. The 6th section of the act of incorporation requires the election of the directors to be held annually, on the first Tuesday of January, and that notice of the time and place of the election shall be published for ten days previous thereto. The directors are also required to appoint five or more stockholders to be inspectors of the election. These are not provisions of the act of incorporation which the directors in office may comply with or not as they may deem proper; although the corporation does not immediately cease to exist if the directors are not elected upon the day appointed. And where the legislature has directed an act to be performed by the directors and corporators of a corporation, it is no excuse for them to urge that they deemed a compliance with such legislative requirement unnecessary. The 8th section of the act was intended to provide for a case where the annual election had not been held, at the appointed time, through mere inadvertence or forgetfulness; but certainly not to justify the directors in office for an intentional neglect of their duty, in not appointing inspectors and giving notice of the election as required by the act of incor-

poration. In this case, I presume, the directors had no intention to disregard their duty in that respect; and that they acted under an honest belief that a new election would be entirely useless to the stockholders. But as it was a violation of one of the provisions of the charter which was sufficient to give the court jurisdiction, and as it also appears that the business for which the company was incorporated has been abandoned without any intention of resuming it, I think it is a proper case for the appointment of a receiver to close up the affairs of the corporation.

It appears also, by a paper annexed to the affidavits in opposition to this application, that about four-fifths of the stockholders, in amount, are willing and anxious to have the affairs of the company closed under the direction of the committee already appointed by the directors for that purpose; under the contemplated arrangement with one of the trust companies. And it would probably be for the benefit of all that some arrangement should be made to prevent the sacrifice of property which must be made, if the securities are to be sold and turned into money within the time contemplated by the provisions of the revised statutes for the final distribution of the funds of the company among its stockholders, after paying the debts. The counsel for the petitioners, however, insists upon a decision on this application, and I have no authority to make any order in the case which is not authorized by the strict rules of law. It must therefore be referred to Master Codwise, to appoint one or more receivers, not exceeding three, of the property and effects of the corporation, as he in his discretion may deem proper; and to take from such receivers security, in the sum of $20,000, for the faithful discharge of the duties of the trust. The attorney general, or any creditor or stockholder of the company, is to be at liberty to appear before the master and to propose a receiver or receivers; for which purpose the master is to give ten days public notice in two of the daily papers of the city of New-York, of the time and place of hearing before him on such reference. And upon the confirmation of the master's report as to such appointment, and the filing of the security taken by him with the

register, such receiver or receivers are to be invested with all the powers and authority conferred by law upon receivers appointed under and in virtue of the 41st section of the article of the revised statutes relative to proceedings against corporations in equity, and are to discharge the duties of such receivers according to law in such cases. An injunction must also be issued, restraining the corporation and its officers from exercising any of its corporate rights, privileges or franchises, and from receiving any debts or demands, and from paying out or in any way transferring or delivering to any person any of the monies, property or effects of the corporation, until the further order of the court; except that the officers of the company, until the appointment of the receiver is perfected, may proceed, in the name of the corporation, in the collection of any debt due to the company, and deposit the money in the Trust Company to the credit of the receiver who may thereafter be appointed, or may pay the same out in discharge of the liquidated debts of the corporation, but not otherwise. The receiver is also to deposit all monies which may come to his hands, beyond what are necessary to discharge the current expenses of the trust, in the New-York Life Insurance and Trust Company, without delay, to accumulate; until the same shall be wanted by him to discharge the debts due from the corporation, or to distribute among the stockholders thereof according to law. He is also to pay to the solicitor for the petitioners the taxable costs of this application and of the reference to the master out of the funds of the company.(a)

---

(a) The corporation appealed from this decision to the court for the correction of errors; but that court having determined that such appeal did not stay the proceedings, unless security for the effects of the corporation had been given, as required by the statute, (2 R. S. 606, § 83,) the appellants abandoned their appeal and submitted to the decision of the chancellor.