that, the relator having sold the lumber in reliance upon that custom, he ought not to be precluded from having his pay. Undoubtedly, where one man is dealing with another, and by a long-continued course of dealing a custom has been established between them with regard to their business, upon which one of them relies, he has a right to depend upon that as the basis of the contract with the other man, and to appeal to it to enable him to recover, when his right is disputed. But that rule of law only applies in a case where the parties have the power to make the contract upon which the recovery is based. That is not the case here. The commissioner of highways is not the agent of the town. He is required only to perform such duties as the law imposes upon him, and those duties are public in their nature, and are imposed upon him, and not upon the town. He may bind the town, to be sure, by his negligence in performing those duties; but that is not because he is the agent of the town, but because the law says that the town shall be responsible for his failure to perform the act which the law makes it his duty to do. So far as the town is concerned, his powers are laid down in the statute, and the statute nowhere gives him the power to bind the town by contracting a debt. Towns, in this state, are municipal bodies created by the statute. They themselves have no original powers or rights, nor any rights except such as the statute gives them. In these respects they differ widely from the towns of Massachusetts and some of the New England states, which are original corporate bodies, existing by the agreement of the inhabitants, and in some cases before the state or colony itself came into being. In these states it has been held that under certain circumstances the town is bound by a well-established custom, but that rule of law does not apply in this state. The town itself can contract no liability, in this state, except such as the law permits. Lorillard v. Town of Monroe, 11 N. Y. 392; Wells v. Town of Salina, 119 N. Y. 280, 23 N. E. 870; Morson v. Town of Gravesend, 89 Hun, 52, 35 N. Y. Supp. 94. Much less can officers of the town, like commissioners of highways, overseers of the poor, and assessors, who are not in any respect agents of the town, but public officers charged with public duties by the legislature of the state, contract a debt against the town which it could not contract itself. For these reasons the motion for a mandamus must be denied, with $10 costs.

---

(89 Hun, 167.)

OSBORN v. MONTELAC PARK et al.

(Supreme Court, General Term, Second Department. July 26, 1895.)

CORPORATIONS—MORTGAGE TO SECURE INDIVIDUAL DEBT OF OFFICER.
    A corporation has power to mortgage its property to secure the individual debt of one of its officers, where the stockholders do not object, and no right of creditors intervenes.

Appeal from special term, Orange county.

Action by Ezra A. Osborn against the Montelac Park and others to foreclose a mortgage given to plaintiff by one McDowell to se-

cure the purchase money of land conveyed to McDowell by plaintiff. Judgment was rendered in favor of plaintiff, and defendants Elnathan T. Field, and Chester Huntington, as receiver of the Greenwood Lake Improvement Company, appeal. Affirmed.

The opinion of Mr. Justice BROWN at special term is as follows:

The mortgage in suit was executed and delivered to plaintiff on September 8, 1887, by William O. McDowell, who at that date held the title to the mortgaged premises. The amount due thereon is agreed upon between McDowell and the plaintiff at $17,000, with interest from July 1, 1894, amounting at this date to $17,615.42. The title to the land at the commencement of this action was in the Montelac Park. None of the defendants have answered except the defendants Field and Huntington. The latter defendant, as receiver of the Greenwood Lake Improvement Company, attacks the mortgage on the ground that the mortgaged premises were, at the date of the mortgage, owned by the corporation, and that the mortgage was executed by McDowell as president thereof, without authority, and to secure his individual debt. It appears that prior to 1884 the Greenwood Lake Improvement Company had the title to the land. McDowell was its president, and the plaintiff was its treasurer. McDowell individually was indebted to the plaintiff, and by three separate deeds the land was conveyed to the plaintiff as security for the debt due to him from McDowell. On September 8, 1887, the property was conveyed to McDowell, and he thereupon executed the mortgage in suit. In February, 1888, McDowell conveyed the land to the improvement company. This deed was made "subject to two certain mortgages." In November, 1888, the property was conveyed by the improvement company to Frank Osborn, subject to the mortgage in suit. Subsequently the company was reinvested with the title, and on December 19th it was conveyed to Sherman W. Knevals, who thereafter conveyed it to the Montelac Park, subject to the mortgage. Neither the Montelac Park, nor the improvement company, nor any stockholder or creditor of the latter corporation, questions the validity of the mortgage, and the sole question before the court is whether the defendant Huntington, as receiver, may assail the validity of the mortgage upon the ground that it was given to secure an individual debt of the president of the improvement company. I am of the opinion that the court had no jurisdiction to decree the dissolution of the improvement company in the suit in which Huntington was appointed receiver, the judgment roll in which was introduced in evidence. The power of the court to dissolve a corporation depends entirely upon statute. The cases in which such an action can be maintained are set forth in section 1785 of the Code of Civil Procedure, and the persons who can maintain such an action are stated in section 1786.

The complaint in Field's suit, so far as it applied to an action to dissolve the corporation, was defective in every particular required by the statute. Field himself could not maintain a suit to dissolve the corporation, and there were no allegations of facts in the complaint such as are required by section 1785, and no relief of that kind was prayed for. The court had no general jurisdiction on the dissolution of the corporation. Its power in that respect was derived solely from the statute, and, unless the complaint showed the jurisdictional facts, it had no power to act, and its decree was void. I must assume, therefore, that the corporation still exists. The judgment in Field's action may be treated as valid to sequestrate the property of the corporation, but so far as it purports to dissolve the corporation, it is a nullity.

There was nothing malum in se or malum prohibitum in the act of the corporation in loaning its credit to McDowell, or in mortgaging its property for his debt. The stockholders are the equitable owners of the corporate property, and, if they do not object, and no rights of creditors intervene, there can be no legal objection to the mortgage. In this case neither corporation nor stockholders question the mortgage. The defendant Huntington does not represent stockholders, but creditors only. He is a receiver to sequestrate the corporate property, and apply it to the payment of the corporate debts. But it is not shown that there is any present creditor who was such at the time the mortgage was given. There is no proof as to the origin of Field's debt. It appears from the judgment roll in the sequestration suit that he

recovered a judgment against the company in December, 1892, but beyond the fact of his being a creditor at that time the court has no information before it. My conclusion, therefore, is, that the validity of the mortgage has not been impeached, and the plaintiff must have judgment of foreclosure in the usual form.

Argued before DYKMAN and PRATT, JJ.

Francis Lawton, for appellants.
Eldon Bisbee, for respondent.

No opinion. Judgment affirmed, with costs, on opinion of trial judge.

━━━━━

(90 Hun, 103.)

## FRANZEN v. ZIMMER.

(Supreme Court, General Term, Fifth Department. October 16, 1895.)

1. FOREIGN CORPORATIONS—ASSIGNMENTS FOR BENEFIT OF CREDITORS—POWER TO MAKE.
    A foreign corporation, in the absence of evidence of the statute law of its domicile, will be presumed to have authority to make an assignment for the benefit of creditors, as the courts of one state will presume that the common law prevails in other states.

2. SAME—COMITY BETWEEN STATES.
    A general assignment by a foreign corporation, executed in the state of its domicile, will be recognized in New York, so as to authorize the assignee to sue a resident debtor of the company, the assignment not coming in conflict with the claims of resident creditors.

3. SAME—PRESUMPTION.
    Where an agent of a foreign insurance company has transacted business for the company in New York without objection from the state authorities, it will be presumed, in an action against its agent for premiums collected, that it has complied with the statutory provision, so as to authorize it to do business.

4. PRINCIPAL AND AGENT—ESTOPPEL.
    An agent of a foreign insurance company doing business in New York is estopped to assert, when sued for premiums collected, that the company was not authorized to do business in the state.

5. SAME—REVOCATION OF AGENT—SET-OFF
    An agent of an insurance company, whose authority the company has revoked by executing an assignment for the benefit of creditors, has no authority after such time to cancel policies and pay rebates on the premiums, and therefore cannot set off rebates so paid against a claim by the assignee for premiums collected.

Appeal from Monroe county court.

Action by Jacob F. Franzen, as assignee, etc., against Frederick Zimmer. From a judgment of the county court reversing a judgment of the municipal court of the city of Rochester for defendant, defendant appeals. Affirmed.

Argued before LEWIS, BRADLEY, WARD, and DAVY, JJ.

H. B. Hallock, for appellant.
John M. Murphy, for respondent.

DAVY, J. The plaintiff, as assignee of the St. Paul German Insurance Company, of St. Paul, Minn., brings this action to recover $399 from the defendant, which he, as agent of the assignor, has collected on policies of insurance issued by the company. It ap-